IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| South Carolina Electric and Gas Company, ) | Civil Action No. 2:16-2468-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Old Republic Insurance Company, ) | |
| Emerson Electric Company, and ) | |
| Emerson Process Management Power ) | |
| and Water Solutions, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff South Carolina Electric and Gas Company ("SCE&G") filed this lawsuit in July 2016 seeking a declaration that Old Republic Insurance Company ("Old Republic") has a duty to defend and possibly indemnify SCE&G in connection with two underlying personal injury lawsuits. This matter is before the Court on SCE&G's motion for partial summary judgment (Dkt. No. 28) on its claims for a declaration that Old Republic has breached its duty to defend SCE&G, that Old Republic should fully reimburse SCE&G for its prior defense costs, and that Old Republic should pay for SCE&G's defenses in the underlying cases moving forward. For the reasons set forth below, SCE&G's motion for summary judgment is denied.

I. **Background**

The following facts are not in dispute. SCE&G owns and operates an electric plant in Canadys, South Carolina (the "Canadys Plant"). On or around September 17, 2008, SCE&G entered into a Master Agreement with Emerson Process Management Power and Water Solutions, Inc. ("Emerson Process") under which Emerson Process agreed to update the turbine control systems at the Canadys Plant. (Dkt. No. 1-1 at 11-22.) That Master Agreement included a clause which required Emerson Process to "list SCE&G and its subsidiaries as an additional

-1-

insured subject to the limitations and restrictions set forth in Section entitled 'Limitation of Liability,' and cover only third-party claims *to the extent of the negligent acts or omissions of Emerson*" ((*Id.* at 21) (emphasis added).) Defendant Old Republic issued a Commercial General Liability Policy (the "Policy") to Emerson Electric Company ("Emerson") and its subsidiaries[1] for two million dollars ($2,000,000). (Dkt. No. 32-1.) The Certificate of Insurance indicates that Emerson named SCE&G as an additional insured under the Policy subject to the following limitations: "The Certificate Holder [SCE&G] is included as an Additional Insured on the General Liability but only in respect to their interest in the operations of the Named Insured [Emerson] and only for such terms and limits which are the lesser of the policies hereon or the written requirements between the Named Insured and Certificate Holder." (*Id.* at 2.) The parties agree that, under Certificate of Insurance and Master Agreement, SCE&G only qualifies as an additional insured "to the extent of the negligent acts or omissions of Emerson."

On September 28, 2011, Mr. Samuel Washington was performing electrical work for Emerson at the Canadys Plant when he came into contact with live wires and was injured from an electrical shock.[2] Mr. Washington filed a tort action against Emerson, SCE&G, and others in the Colleton County Court of Common Pleas, and his wife filed a companion case for loss of consortium[3] (together, the "underlying cases"). The complaints allege negligence, negligent supervision, and/or negligent training on behalf of SCE&G, Emerson, and others. (Dkt. No. 28-1.) Notably, the complaints make identical allegations against both Emerson and SCE&G, and

---

[1] Emerson Process is a subsidiary of Emerson.
[2] Mr. Washington was employed by Applied Control Technology, a subcontractor for Emerson Electric. Applied Control Technology is not a defendant in the underlying cases.
[3] See Complaints in *Samuel Washington, Jr. v. S.C. Electric and Gas Company and Emerson Electric Company d/b/a Emerson Network Power, and/or Emerson Network Power*, C.A. No.: 2013-CP-15- 0411; *Louise Washington. v. S.C. Electric and Gas Company and Emerson Electric Company d/b/a Emerson Network Power, and/or Emerson Network Power*, C.A. No.: 2013-CP-15-0412).

the allegations against SCE&G are direct – they do not rely on any theory of vicarious liability. On March 7, 2017, SCE&G learned that Emerson had settled with the Washingtons in the underlying cases which are both scheduled for trial in April 2017.

SCE&G claims that by March 1, 2017, it had incurred expenses over $90,000 defending the Washington cases. (Dkt. No. 28 at 6.) SCE&G has moved for summary judgment, asking this Court to find that Old Republic breached its contractual duty to defend SCE&G as an additional insured in the underlying cases and is responsible for reimbursing SCE&G for its prior defense costs and for paying SCE&G's defense costs for the underlying cases going forward.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative

allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

**B.    Insurance Policies**

This Court has diversity jurisdiction under 28 U.S.C. § 1332. In diversity cases, federal courts apply the choice of law rules of the states in which they are located. *See Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.*

**C.    Duty to Defend and Indemnify**

In South Carolina, the duty to defend is separate from the duty to indemnify. *American Casualty Co. v. Howard*, 187 F.2d 322, 327 (4th Cir.1951). "Although these duties are related in the sense that the duty to defend depends on an initial or apparent potential liability to satisfy the judgment, the duty to defend exists regardless of the insurer's ultimate liability to the insured. . . Indemnity contemplates merely the payment of money. The agreement to defend contemplates the rendering of services." *Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818, 820 (1977) (citations omitted). South Carolina courts look to the allegations in the complaint to determine the scope of an insurance company's duty to defend a claim brought against its insured. *C.D. Walters Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 316 S.E.2d 709 (S.C. Ct. App. 1984). If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend unless the damage alleged was

unambiguously excluded by the policy. *See USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 797 (S.C. 2008); Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co., 265 S.E.2d 38 (1980).*

### III. Discussion

The parties agree that, under the Policy and Master Agreement, SCE&G only qualifies as an additional insured "to the extent of the negligent acts or omissions of Emerson." Old Republic argues that this language limits SCE&G's coverage to the defense of allegations that it is vicariously liable for the negligent acts or omissions of Emerson. Old Republic therefore believes it has no duty to defend or indemnify SCE&G because neither of the underlying complaints seeks to hold SCE&G vicariously liable for the acts of Emerson. SCE&G argues first that the Policy and Master Agreement do not limit its coverage to claims of vicarious liability and second that the complaints do, in fact, seek to hold SCE&G liable for the negligence of Emerson. The Court must determine (1) whether the language limits SCE&G's coverage to vicarious liability for the acts of Emerson, and (2) whether the complaints create the possibility that SCE&G could be held vicariously liable for the acts or omissions of Emerson.

The language at issue here – "to the extent of the negligent acts or omissions of Emerson" – limits SCE&G's coverage as an additional insured to the defense of allegations that it is vicariously liable for the acts or omissions of Emerson. Courts across the country have distinguished between policy language that covers additional insureds broadly (i.e. for conduct "arising from" or in connection with the acts of the named insured) and policy language that covers additional insureds more narrowly (i.e. only for vicariously liability based on the negligence of the named insured). Courts have found that coverage for additional insureds is not limited to vicarious liability for acts or omissions of the named insured when the policy at issue covers the additional insured for claims that arise from or are connected to the work of the

named insured. *See SFH, Inc. v. Millard Refrigerated Servs., Inc.*, 339 F.3d 738 (8th Cir. 2003) (additional insured's coverage not limited to vicarious liability where policy covers any underlying action that "arises out of" maintenance of the leased premises); *Marathon Ashland Pipeline, LLC, v. Maryland Cas. Co.*, 243 F.3d 1232, 1237 (10th Cir. 2001) (additional insured's coverage not limited to vicarious liability where policy covered additional insured "with respect to liability arising out of [named insured's] ongoing operations performed for [the additional] insured."); *Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co.*, 721 F. Supp. 740, 742 (E.D. Pa. 1989) (additional insured's coverage not limited to vicarious liability where policy provided coverage "for any work performed by [named insured] on [additional insured's] behalf"; *Dayton Beach Park No. 1 Corp. v. National Union Fire Ins. Co.*, 573 N.Y.S.2d 700, 701 (additional insured's coverage not limited to vicarious liability where policy provided coverage for claims "arising out of . . . operations performed for the additional insured . . . by the named insured").

By the same token, courts are quick to honor the parties' intent when contractual language clearly limits the scope of coverage for additional insureds to vicarious liability for acts or omissions of the named insured by referencing the negligence of the named insured. *See Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800, 805–06 (E.D. Pa. 1983) (additional insured's coverage limited to liability based on negligence of the named insured when policy applied "only to the extent of liability resulting from occurrences arising out of negligence of reading Company"); *Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co.*, 721 F. Supp. 740, 742 (E.D. Pa. 1989) ("If the parties had intended coverage to be limited to . . . vicarious liability . . . , language clearly embodying that intention was available" in *Harbor*.); *Hormel Foods Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 938 F. Supp. 555, 559 (D. Minn. 1996), *aff'd*, 131 F.3d 143 (8th Cir. 1997) (finding policy that covered losses "arising out of the ownership, maintenance or use"

more broad than the "policy in Harbor Insurance [which] specifically provided additional insured coverage only for the negligent acts of the principal insured"); *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 615 (Tenn. Ct. App. 2011) ("if the parties had intended to insure the additional insured for vicarious liability . . . the endorsement could have simply referred to vicarious liability *or the negligence of the named insured*") (emphasis added). The contractual language at issue here limits SCE&G's coverage as an additional insured "to the extent of the negligent acts or omissions of Emerson," so the parties clearly intended to limit the scope of SCE&G's coverage to vicarious liability for acts or omissions of Emerson.

Second, this Court must consider whether the complaints in the underlying cases create the possibility that SCE&G could be held vicariously liable for the acts or omissions of Emerson. SCE&G argues that the allegations of the complaints, which are identical for SCE&G and Emerson, create the "possibility" of coverage because SCE&G has "arguably" been sued for the tortious acts of Emerson. ((Dkt. No. 28 at 11-12) ("Even if Plaintiffs were able to establish some tort duty and breach of said duty by SCE&G as owner to Mr. Washington, SCE&G is still being sued, in part, for the negligent acts or omissions of Emerson.")) SCE&G adds that it may be able to present an empty chair defense at trial as to Emerson which would allow the jury to apportion fault between Emerson and SCE&G. (*Id.* at 13.)

In *Smurfit-Stone*, the United States District Court for the Eastern District of Virginia held that the additional insured (Smurfit-Stone) was not entitled to recover defense costs where Smurfit-Stone was covered only to the extent that it was alleged to be vicariously (or derivatively) liable for the named insured's actions, and the underlying complaint did not allege that Smurfit-Stone was vicariously liable in any way. *Smurfit-Stone Container Enterprises, Inc. v. Nat'l Interstate Ins. Co.*, No. 3:08CV093-HEH, 2008 WL 4153762, at *2-5 (E.D. Va. Sept. 5, 2008); *see also Marks v. Scottsdale Ins. Co.*, 791 F.3d 448, 450 (4th Cir. 2015) (additional insured's defense not covered

when policy limited liability to claims based on negligence of the named insured, and complaint did not seek to hold additional insured vicariously liable or liable for activities performed on the named insured's behalf). Notably, the district court rejected Smurfit-Stone's assertion that the underlying complaint's allegation that Smurfit-Stone and the named insured [Terminal] "joined and concurred with the wrongdoing of one or more other Defendants" could be construed as an allegation that Smurfit-Stone is vicariously liable for the actions of Terminal. *Id.* at *4 n.3.

### IV. Conclusion

For the reasons above, SCE&G's motion for summary judgment (Dkt. No. 28) is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 1'/, 2017
Charleston, South Carolina